ORDERED.

**Dated:  September 30, 2022**

_____
Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Philip R. Del Vecchio, | ) | Case No.  6:20-bk-05159-LVV |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Joseph F. Russo, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 6:20-ap-00117-LVV |
| | ) | |
| vs. | ) | |
| | ) | |
| Philip Robert Delvecchio, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **MEMORANDUM OPINION**

Plaintiff, Joseph F. Russo ("Plaintiff" or "Russo"), filed this adversary proceeding seeking to deny Philip R. Del Vecchio ("Debtor" or "Defendant"), a discharge under § 727 of the Bankruptcy Code.[1] Russo believes the Debtor transferred or concealed assets before and after the

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq*.

bankruptcy filing under § 727(a)(2); concealed or failed to maintain adequate records under § 727(a)(3); made a false oath or claim under § 727(a)(4); and, failed to explain satisfactorily any loss or deficiency of assets to meet his liabilities under § 727(a)(5). Most of the allegations center around Debtor converting his business from a sole proprietorship to an LLC while being pursued by Russo. Debtor denies the allegations. After considering the testimony and evidence presented at trial,[2] and written closing arguments submitted after the trial,[3] the Court finds the Debtor is entitled to a discharge.

## **Factual Findings**

The Debtor is an entrepreneur. Fifteen years ago, the Debtor and Asha Morales ("Morales") began working together selling franchises.[4] The Debtor initially operated as a sole proprietor.[5] For each franchise sold, the Debtor received a commission that was deposited into his personal bank accounts.[6] The Debtor would then pay Morales 25% of the gross commission and keep the remaining 75%, which the Debtor used to pay business and personal expenses.[7]

During this time, the Debtor and Russo were the sole members of MM Café Florida, LLC ("MMCF"). To secure a $50,000 loan Russo made to MMCF, the Debtor signed a $25,000 promissory note in favor of Russo ("Note").[8] The Debtor defaulted on the Note.[9] Russo filed a complaint against the Debtor for breach of the Note in the Florida state court.[10] On April 16, 2020, the Florida state court entered final summary judgment in favor of Russo and against the Debtor

---

[2] The trial was held on June 30, 2022.
[3] Doc. Nos. 75, 76 and 77.
[4] Doc. No. 80. 6/30/22 Trial Tr. 29:18-30:2, 126:17.
[5] Doc. No. 80. 6/30/22 Trial Tr. 121:23-122:3.
[6] Doc. No. 80. 6/30/22 Trial Tr. 30:6. *See also*, Ex. 44-45 and 47-57.
[7] Doc. No. 80. 6/30/33 Trial Tr. 103:5; 126:7-127:22. *See also*, Ex. 45, 48, 50, 51, 54, 56 and 57.
[8] Ex. 1, Complaint at Ex. A.
[9] Ex. 2, Final Summary Judgment.
[10] Ex. 1, Complaint. *Russo v. Delvecchio*, Case No. 2019-CA-4431 (Fla. 9th Cir. Ct., Apr. 16, 2020).

for $37,549.75 ("Judgment").[11] Russo was later awarded his attorney fees and costs totaling over $20,000.[12]

About one month after the Judgment, the Debtor formed Drumming Up Business Franchising Limited Liability Company ("DUB").[13] Like the Debtor's sole proprietorship, DUB sold franchises. The Debtor and Morales were managers of DUB.[14] Although no written operating agreement existed, the Debtor and Morales proceeded with the same business arrangement—the Debtor would receive 75% and Morales 25% of franchise sale commissions.[15] The Debtor and Morales had signatory authority for DUB's bank account.[16] Franchise sale commissions were deposited into DUB's bank account, after which disbursements were made for ordinary business expenses, and then to the Debtor or Morales.[17]

On September 15, 2020 ("Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.[18] Lori Patton was appointed Chapter 7 Trustee ("Trustee"). The Debtor's bankruptcy schedules and statements disclosed assets totaling less than $30,000 and debts exceeding $200,000.[19] Before the meeting of creditors under § 341, the Debtor amended his bankruptcy Schedule I, Schedule J and means test form.[20] The Trustee concluded the meeting of creditors and filed a report that no distribution would be made to creditors in the Debtor's bankruptcy case. The Debtor later amended his bankruptcy Schedule A/B.[21]

---

[11] Ex. 2, Final Summary Judgment.
[12] Ex. 3, Order Reinstating the Final Judgment Dated July 7, 2020.
[13] Ex. 13. The Debtor formed DUB on May 26, 2020.
[14] Ex. 13.
[15] Doc. No. 80. 6/30/22 Trial Tr. 122:4-123:20, 124:19,
[16] Doc. No. 80. 6/30/22 Trial Tr. 40:20, 122:4.
[17] Doc. No. 80. 6/30/22 Trial Tr. 117:22-118:3. *See also* Ex. 23, 26, 29, 27, 28, 40, 41, 42, 73, 74, 75, 80, 89, 97, 101, 104, 108, 111, 116, 123, 126, 136, and 161.
[18] Main Case, Doc. No. 1.
[19] Main Case, Doc. No. 1.
[20] Main Case, Doc. No. 6.
[21] Ex. 5.

Russo then filed this adversary proceeding objecting to the Debtor's discharge under 11 U.S.C. § 727. The Trustee has not joined Russo objecting to the Debtor's discharge. During this proceeding, the Debtor and Morales formed ZGroup Franchising LLC ("ZGroup").[22] Like the Debtor's sole proprietorship and DUB, ZGroup sells franchises and operates similar to the Debtor's sole proprietorship and DUB.[23]

On June 30, 2022, the Court held a one-day trial on Plaintiff's complaint. The Debtor and Morales testified as witnesses. Because of the number of exhibits and alleged transfers at issue, the parties submitted written closing arguments after which the Court took this matter under advisement.

## Legal Analysis

Section 727(a) provides a "court *shall* grant the debtor a discharge, unless" the debtor committed one of the specific actions enumerated. 11 U.S.C. § 727 (emphasis added). "The Bankruptcy Code favors discharge of an honest debtor's obligations." *In re Jennings*, 533 F.3d 1333, 1338 (11th Cir. 2008). Generally, objections to discharge are construed liberally for the honest debtor and strictly against the objecting creditor. *Id. See also In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009). Courts recognize that "[t]he reasons for denying a discharge… must be real and substantial, not merely technical and conjectural." *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994)(quoting *In re Tully*, 818 F.2d 106,110 (1st Cir. 1987) and *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir. 1934); *In re Delgado*, Case No. 9:18-bk-01732-FMD, 2020 WL 4005786, *14 (Bankr. M.D. Fla. July 14, 2020). To prevail, Russo must prove his objections by a preponderance

---

[22] Ex. 14. ZGroup was formed on February 4, 2022.
[23] Doc. No. 80. 6/30/22 Trial Tr. 39:11.

of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

### *11 U.S.C. § 727(a)(2)*
#### *Transfers with intent to hinder, delay, or defraud a creditor*

Section 727(a)(2) of the Bankruptcy Code allows the court to deny a discharge when "the debtor, with intent to hinder, delay or defraud a creditor… has transferred, removed, destroyed, mutilated, or concealed… (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of filing the petition." 11 U.S.C. 727(a)(2)(A)(B). Under § 727(a)(2), Plaintiff must establish: "(i) a transfer or concealment of property of the debtor or estate, (ii) improper intent, and (iii) an improper act that occurred either during the one year preceding the filing or postpetition." *In re Fasolak*, 381 B.R. 781, 787 (Bankr. M.D. Fla. 2007)(quoting *In re Matus*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004). A debtor's intent to hinder, delay or defraud his creditors may be established by circumstantial evidence or inferred from the debtor's course of conduct. *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008); *In re Wright*, 618 B.R. 569, 583 (Bankr. M.D. Fla. 2020). If the Plaintiff meets this burden, the Debtor must then provide the Court with enough credible evidence to dissuade the Court from exercising its jurisdiction to deny the debtor a discharge. *Jennings,* 533 F.3d at 1339.

Russo's Closing Trial Memorandum identified transfers or acts before and after the Petition Date which the Debtor allegedly committed with actual intent to hinder, delay or defraud a creditor—Russo.[24] As explained below, Plaintiff has failed to meet his burden under § 727(a)(2).

---

[24] Doc. No. 76. At trial, Plaintiff requested parties submit written closing arguments within 14 days given the voluminous documents presented. Debtor did not object. *See* Doc. No. 80. 6/30/22 Trial Tr. 131:17-133:25.

<u>Transfer of Sole Proprietorship to DUB</u>

Russo argues that within one year preceding the Petition Date, the Debtor transferred all "economic value" of his sole proprietorship to DUB with intent to hinder, delay or defraud Russo. To demonstrate the transfer of Debtor's property (the sole proprietorship), Russo relied on the Debtor's trial testimony that both the sole proprietorship and DUB sold franchises, the Debtor and Morales worked for the sole proprietorship and then later operated and had ownership interests in DUB. Russo further relies on the Debtor's bankruptcy statements which indicated the Debtor had over $80,000 of gross income in 2018 from operating a business as a sole proprietor.[25] Russo provided evidence that two businesses—Rock & Roll Daycare ("R&R Daycare") and Graffiti Junktion Franchising, LLC ("Graffiti Junktion")—made payments to the Debtor and then later DUB.[26] Because the Debtor formed DUB a month after entry of the Judgment, Russo asserted the Debtor's actions establish his intent to hinder, delay or defraud a creditor.

The Court finds Russo failed to prove any transfer of assets. Russo presented no evidence of what property, if any, the Debtor transferred to DUB. There was no evidence of the terms of Debtor's agreements (if any) with R&R Daycare or Graffiti Junktion regarding franchise sale commissions. There was likewise no evidence DUB received monies owed to the Debtor.[27] Nor did the Court receive any evidence about DUB's agreement with R&R Daycare or Graffiti Junktion. Russo simply demonstrated that R&R Daycare and Graffiti Junktion made payments to the Debtor and later, DUB for franchise sale commissions.

Russo also failed to demonstrate that the sole proprietorship had any "economic value" the Debtor could have transferred to the newly formed DUB. The Debtor's bankruptcy statements

---

[25] Doc No. 76 at 5.
[26] Ex. 23, 44-45, 47-48, 49-50, 52-57.
[27] Although Russo's closing argument at p. 6 argued the sole proprietorship and DUB performed under the same business contracts, the Court received no evidence of any contracts between the Debtor and these customers.

provided the Debtor's 2019 gross income from operating a business had been reduced to about $15,000.[28] Although Russo established during January 2020 through May 2020, the Debtor received over $70,000 from R&R Daycare and Graffiti Junktion, this alone does not demonstrate economic value of the sole proprietorship.[29] At best, economic value reflects what someone would be willing to pay for the business. Russo presented no evidence to establish the economic value of the sole proprietorship.[30] Nor did Russo direct the Court to a particular transfer from the Debtor's bank accounts to DUB's bank account, or any other transfer of the Debtor's property to DUB. Here, Russo's argument that the Debtor transferred the "economic value" of his sole proprietorship to DUB is not supported by the evidence.

Furthermore, the Debtor testified that he formed DUB upon the advice of his accountant for tax purposes.[31] This Court finds Debtor's testimony credible. The evidence is insufficient to find that the Debtor formed DUB with the intent to hinder, delay or defraud Russo. Based on the record evidence, the Court does not find that the Debtor transferred his property to DUB with intent to hinder, delay or defraud Russo.

<u>Transfers or Concealment of Money Before the Petition Date</u>

Russo argues within one year preceding the Petition Date, the Debtor or DUB—the Debtor's alleged alter ego—transferred or concealed "over $100,000" and that the Debtor concealed $34,900 of income deposited into DUB's bank account in July 2020, all with intent to

---

[28] Ex 4, Statement of Financial Affairs at ¶ 4.
[29] Ex. 47-57. These exhibits consist of deposit slips, negotiated checks and certain pages of the Debtor's personal bank account statements. Because Russo submitted partial bank statements often missing 3-4 pages of the monthly statement, the Court had little evidence, if any, as to expenses of the sole proprietorship.
[30] As a personal service business with no customer agreements, the Court doubts the sole proprietorship had any value.
[31] Doc. No. 80. 6/30/22 Trial Tr. 30:9-17.

hinder, delay or defraud Russo.[32] First, Russo alleges DUB is the Debtor's alter ego and as a result DUB's property is the Debtor's property. He makes this claim based on the Debtor transitioning from a sole proprietor to DUB to operate the same business. Russo relies on deposit slips, partial bank statements and negotiated checks from the Debtor's bank accounts and DUB's bank account, along with the Debtor's bankruptcy schedules and statements to demonstrate that the Debtor transferred or concealed over $100,000 within one-year preceding the Petition Date with intent to hinder, delay or defraud Russo.[33]

The Court finds Russo failed to establish a transfer or concealment of the Debtor's property during the one year preceding the Petition Date with intent to hinder, delay or defraud a creditor. As an initial matter, a Florida limited liability company or LLC "is an entity distinct from its members" and an LLC member "has no interest in any specific limited liability company property." *In re Thompson*, Case No. 8:22-bk-00740, 2022 WL 2196746 at * 2 (Bankr. M.D. Fla. June 10, 2022)(quoting Fla. Stat. § 605.0108(1) and § 605.0110(4))). So, if a Florida LLC member files bankruptcy, the bankruptcy estate does not include property of the LLC. *Id.*

This Court has previously found § 727 only allows creditors the ability to challenge discharges if the debtor "hides, conceals or lies about assets *already* included as property of the estate," and not for hypothetical assets which may be brought into the estate under other theories, such as alter ego theories. *Alliant Tax Credit VIII v. Singleton (In re Singleton)*, 628 B.R. 835 (Bankr. M,D. Fla. 2021)(quoting *In re Patel*, Case No. 6:18-bk-00036-KSJ, 2019 WL 10734051,

---

[32] Doc. No. 76 at 4-5. Russo also argued that the Debtor transferred or concealed $43,905.56 between July 29, 2020 November 25, 2020 which includes both prepetition and postpetition transfers. Id at 7. To the extent $43,905.56 included transfers or concealment prior to the Petition Date, the Court finds they are included in the "over $100,000" of transfers or concealments cited by Russo.

[33] Russo referred to exhibits generally throughout his closing argument with little citations to a particular transaction. For example, Russo refers to "Ex. 15-42" to demonstrate that the Debtor transferred over $100,000 within one year of the Petition Date. Exhibits 15-42 consist of deposit slips, partial bank statements and negotiated checks from the Debtor's bank accounts and DUB's bank account. The Court spent an inordinate amount of time reviewing the trial transcript and exhibits attempting to determine what possible transfers or concealment Russo alleged occurred.

*3 (Bankr. M.D. Fla. Aug. 8. 2019)). Because DUB's assets are not property of the Debtor or bankruptcy estate, the Court finds that the transfer or concealment of DUB's assets, if any, is not a transfer or concealment of property of the debtor as required under § 727. Accordingly, the Court focuses on alleged transfers or concealment of the Debtor's property, and not DUB's property.

The Court had difficulties determining what Russo proved with respect to transfers or concealment of the Debtor's property. Russo established R&R Daycare made electronic deposits into DUB's bank account totaling $34,900 in July 2020.[34] However, Russo failed to demonstrate that the Debtor had an interest in the $34,900 deposited to DUB's bank account. Although R&R Daycare previously paid the Debtor as a sole proprietor, there was no evidence this payment belonged to the Debtor as opposed to DUB. As a result, Russo failed to meet his initial burden as to the alleged transfer of $34,900.

---

[34] Ex. 23.

Russo also established the Debtor deposited $90,287.50 into his personal bank accounts from January 2020 through the Petition Date.[35] The majority of deposits—$70,937.50—consisted of checks or wire transfers received from R&R Daycare and Graffiti Junktion *while the Debtor operated as a sole proprietor*. Most of the remaining deposits—$13,700—are funds the Debtor received from DUB.

The Debtor and Morales testified that expenses, such as Morales's 25% commission, regular business expenses and Debtor's living expenses were paid from Debtor's personal bank accounts. The evidence only corroborated this assertion. The Court cannot ascertain any fraudulent intent or purpose by the Debtor when he used funds to pay ordinary business and living expenses. Although Russo noted the Debtor withdrew $5,000 cash on January 31, 2020 and $2,500 cash on

---

[35] The Court determined this amount as follows:

| Deposit Date | Bank Account | Amount | Exhibit No. |
|---|---|---|---|
| 1/2/2020 | Commerce Bank #9082 | 5,000.00 | 44, 45 |
| 1/2/2020 | Commerce Bank #9082 | 2,500.00 | 47, 48 |
| 1/24/2020 | Commerce Bank #9082 | 22,500.00 | 49, 50 |
| 1/31/2020 | Commerce Bank #9082 | 2,500.00 | 50, 51, 52 |
| 2/3/2020 | Fairwinds Credit Union #0294 | 2,000.00 | 15, 16 |
| 2/25/2020 | Commerce Bank #9082 | 22,500.00 | 53, 54 |
| 3/17/2020 | Commerce Bank #9082 | 7,500.00 | 55, 56 |
| 4/29/2020 | Commerce Bank #9082 | 7,500.00 | 57 |
| 5/1/2020 | Commerce Bank #9082 | 937.50 | 57 |
| 5/29/2020 | Commerce Bank #9082 | 1,200.00 | 18, 19 |
| 6/4/2020 | Commerce Bank #9082 | 1,000.00 | 18, 19 |
| 6/9/2020 | Fairwinds Credit Union #0294 | 500.00 | 20, 21 |
| 7/29/2020 | Fairwinds Credit Union #0294 | 1,800.00 | 24, 25 |
| 8/4/2020 | Fairwinds Credit Union #0294 | 8,600.00 | 26, 29 |
| 8/4/2020 | Commerce Bank #9082 | 300.00 | 30 |
| 8/10/2020 | Commerce Bank #9082 | 150.00 | 30 |
| 8/25/2020 | Fairwinds Credit Union #0294 | 3,300.00 | 28, 36 |
| 8/28/2020 | Fairwinds Credit Union #0294 | 200.00 | 37 |
| 9/4/2020 | Fairwinds Credit Union #0294 | 200.00 | 38, 39 |
| 9/14/2020 | Fairwinds Credit Union #0294 | 100.00 | 38 |

**Total Deposits**                     **$ 90,287.50**

August 21, 2020, Russo provided no evidence that the cash withdrawals were done for any improper purpose or with fraudulent intent.[36]

Nor could the Court conclude that the Debtor concealed the funds. The Debtor disclosed his bank accounts on the bankruptcy schedules.[37] The Debtor disclosed that he received income as a sole proprietor and then later from DUB. Russo has again failed to meet his burden. Based on the evidence presented, the Court cannot find that the Debtor transferred or concealed funds "over $100,000" or that the Debtor concealed $34,900 of income deposited into DUB's bank account with intent to hinder, delay or defraud a creditor.

Transfers or Concealment of Money after the Petition Date

Russo argues that after the Petition Date, the Debtor transferred or concealed "over $170,000" of property of the estate and made transfers totaling $7,500 to relatives with intent to hinder, delay or defraud a creditor—Russo.[38] Russo relies on deposit slips, partial bank statements or negotiated checks from the Debtor's bank accounts, DUB's bank account, Morales's bank account, and ZGroup's bank account along with the Debtor's bankruptcy schedules and statements to demonstrate that the Debtor transferred or concealed over $170,000 of estate property with intent to hinder, delay or defraud Russo.[39]

---

[36] Ex. 51, 35

[37] Ex. 4, Schedule A/B at ¶ 17.

[38] Doc. No. 76 at 4-5. Russo also argued that the Debtor transferred or concealed $43,905.56 between July 29, 2020 November 25, 2020 which includes both prepetition and postpetition transfers; transferred or concealed $69,975 between January 4, 2021 and November 18, 2021 and transferred or concealed postpetition $8,263.70 in 2022. Id at 7. To the extent $43,905.56 included transfers or concealment after the Petition Date, the Court finds these amounts plus the $69,975 and $8,263.70 are all included in the "over $170,000" of transfers or concealments alleged by Russo.

[39] Russo referred to exhibits generally throughout his closing argument with little citations to a particular transaction. For example, Russo refers to "Ex. 33, 35, 38, 60-153" to demonstrate that the Debtor transferred over $170,000 of estate assets. These exhibits consist of deposit slips, partial bank statements and negotiated checks from the Debtor's bank accounts, DUB's bank account, and Morales's bank account. The Court spent an inordinate amount of time reviewing the trial transcript and exhibits attempting to determine the possible transfers or concealment Russo alleged occurred.

Once again, Russo fails to meet his burden. None of the alleged transfers or concealments involved property of the estate. Upon filing a bankruptcy case, "all legal or equitable interests of the debtor in property as of the *commencement of the case*" becomes property of the bankruptcy estate unless otherwise provided under § 541 of the Bankruptcy Code. 11 U.S.C. § 541 (emphasis added). Again, the Court painstakingly reviewed the evidence presented, and had difficulty determining what estate property the Debtor allegedly transferred or concealed.

For the reasons discussed earlier, LLC assets are not property of the debtor or bankruptcy estate. Any alleged transfer or concealment of DUB or ZGroup assets after the Petition Date is not a transfer or concealment of estate property as required under § 727.[40] Similarly, any alleged transfer or concealment of Morales's funds after the Petition Date, which is not property of the debtor or bankruptcy estate, is not a transfer or concealment of estate property as required under § 727. This leaves the Debtor.

According to the bankruptcy schedules, on the Petition Date, the Debtor had a Commerce Bank account with a balance of $95.72 and a Fairwinds Credit Union account with a balance of $113.08 (collectively "Bank Accounts").[41] The Debtor claimed an exemption for the funds in the Bank Accounts.[42] Nobody objected to the Debtor's claimed exemption and by law, the exemption is deemed allowed. Once the Debtor's claimed exemption is allowed, the exempted property is considered withdrawn from the estate. *In re LaPace*, 614 B.R. 911, 918 (Bankr. M.D. Fla. 2020).

The evidence failed to demonstrate that the Bank Accounts exceeded the amounts exempted on the Petition Date,[43] or that deposits into the Bank Accounts after the Petition Date

---

[40] Z Group did not exist on the Petition Date.
[41] Ex. 4, Schedule A/B at ¶ 17.
[42] Ex. 4, Schedule C.
[43] The Fairwinds Credit Union account statement provided that the Debtor had exactly $113.08 on the Petition Date—the amount exempted by the Debtor. See Ex. 38. Russo did not provide the Commerce Bank account statement for September 2020 as evidence.

originated from estate property. Because Russo failed to prove the Bank Accounts contained bankruptcy estate funds, any transfers from the Bank Accounts after the Petition Date could not have been a transfer or concealment of property of the estate. As for the alleged transfers totaling $7,500 to relatives, the Court finds that the evidence demonstrated that the transfers totaled only $5,000 and occurred in 2021—well after the Petition Date.[44] Again, Russo provided no evidence that the funds transferred to relatives consisted of estate property.

Based on the evidence presented, the Court cannot find that the Debtor transferred or concealed "over $170,000" of property of the estate or made transfers of estate property totaling $7,500 to relatives with intent to hinder, delay or defraud a creditor after the Petition Date.[45]

### 11 U.S.C. § 727(a)(3)
### Failure to preserve records

Section 727(a)(3) of the Bankruptcy Code allows the court to deny a discharge when "the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all circumstances of the case." 11 U.S.C. § 727(a)(3). Under § 727(a)(3), Plaintiff must establish: "(1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, falsified or concealed recorded information, and (2) that it is *impossible* to ascertain the financial condition of the debtor as a result of the debtor's conduct." *D.A.N. Joint Venture III, L.P. v. Fasolak (In re Fasolak)*, 381 B.R. 781, 790 (Bankr. M.D. Fla, 2007)(emphasis

---

[44] In his written closing argument, Russo referred to Ex. 35 to demonstrate that the Debtor made transfers to relatives. Ex. 35 has copies of 3 checks totaling $5,000 from the Debtor's bank account payable to the Debtor's daughter. The checks were negotiated June 28, 2021, July 26, 2021 and August 23, 2021. Ex. 35 also has a copy of a $2,500 check from the Debtor's bank account payable to cash negotiated on August 21, 2021. The Court addressed this cash payment under prepetition transfers.

[45] It is noted that the Trustee has not joined this objection or sought turnover of any estate property allegedly concealed by the Debtor.

added); *see also Jones v Rumptz (In re Rumptz)*, Case No. 3:10-bk-535; 2020 WL 2462528 at *6

(Bankr. M.D. Fla. May 12, 2020). If Plaintiff meets this initial burden, the Debtor must then justify

the inadequacies. *Rumptz*, WL 2462528 at *6.

Russo asserts the Debtor failed to preserve "all pertinent records relating to his businesses

and profit-sharing arrangement with Ms. Morales" and did not produce or preserve records "(1)

corroborating business expenses Defendant-Debtor alleged to have incurred and paid; (2)

substantiating any profit-sharing with Ms. Morales; or (3) showing tax records filed on behalf of

Drumming Up" along with preserving "corresponding records for ZGroup."[46] Russo's Verified

Amended Complaint likewise referred to "all recorded information, including books, documents,

records and papers…"[47] Based on such generic descriptions, the Court cannot ascertain what

records or documents the Debtor concealed or failed to preserve.[48] Identifying specific missing

records is vital to a § 727(a)(3) objection. *See Fasolak,* 381 B.R. at 790 (holding plaintiff did not

establish debtor failed to preserve records under § 727(a)(3) when plaintiff failed to identify

specific missing records). Furthermore, the Debtor testified he provided Russo with the documents

requested.[49] As a result, the Court finds Russo failed to meet his initial burden by identifying the

recorded information the Debtor failed to keep or concealed.

Finally, if the Debtor concealed or failed to preserve recorded information, the Court finds

it was not *impossible* to ascertain the financial condition of the Debtor. Russo provided the Court

with almost 170 exhibits at trial consisting primarily of deposit slips, wire transfer records, partial

bank statements and negotiated checks for the Debtor's bank accounts, DUB's bank account,

---

[46] Doc. No. 76 at 9.
[47] Doc. No. 12 at 9.
[48] In addition to Plaintiff's written closing argument, the Court reviewed the amended complaint (Doc. No. 12) and Russo's response in opposition to Debtor's written closing argument (Doc. No. 77) which did not identify specific documents or records.
[49] Doc. No. 80. 6/30/22 Trial Tr. 117:19.

Morales's bank account and ZGroup's bank account. Although Russo had partial bank statements as exhibits, Russo did not allege he received incomplete bank statements. The Debtor also testified he provided Russo with his 2019 federal income tax return.[50]

No doubt Russo wanted better financial records. However, the standard under § 727(a)(3) is not whether the Debtor had good bookkeeping practices, but instead whether the Debtor's failure to make or keep records makes it *impossible* to ascertain the debtor's financial condition and business transactions. *Gargula v. Suwaity (In re Suwaity)*, 638 B.R. 201, 211 (Bankr. M.D. Fla. 2022). Here, the available records allowed Russo to reasonably follow the Debtor's transactions and make intelligent inquiry about the Debtor's financial condition. *See id* at 213. Accordingly, the Court finds the Debtor did not fail to preserve or conceal recorded information in violation of 11 U.S.C. § 727(a)(3).

### 11 U.S.C. § 727(a)(4)(A)
### False oath or account

Section 727(a)(4)(A) of the Bankruptcy Code allows the court to deny the debtor a discharge when the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To justify denial of the debtor's discharge for a false oath, the false oath must be "fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *In re Daniel*, 613 B.R. 374, 381 (Bankr. M.D. Fla. 2020); *In re Wright*, 618 B.R. 569, 575 (Bankr. M.D. Fla. 2020). The debtor's fraudulent intent is typically inferred by examining the totality of circumstances surrounding the debtor's bankruptcy case. *Wright*, 618 B.R. at 575-76. An oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 618 (11th Cir. 1984); *Daniel*,

---

[50] Doc. No. 80. 6/30/22 Trial Tr. 111:24-112:3

613 B.R. at 381. An omission from the debtor's schedules and statements may constitute false

oaths under §727(a)(4)(A). *In re Phillips*, 476 App'x 813, 816 (11th Cir. 2012). However, a false

oath made by inadvertence or mistake will not suffice. *See In re Rudolph*, 233 Fed. App'x. 885,

889 (11th Cir. 2007). Here, the Court concludes no materially false oaths exist which justify denial

of the Debtor's discharge.

DUB and Z Group.

Russo argues the Debtor made false oaths in his schedules and statements relating to DUB

and ZGroup. As to DUB, Russo asserts the Debtor made false oaths by omitting DUB's bank

account, undervaluing DUB, and failing to disclose the transfer of "business opportunity and all

economic value" of his sole proprietorship to DUB.[51] For ZGroup, Russo maintains the Debtor

made false oaths by failing to amend his schedules to disclose ZGroup and ZGroup's bank account.

Here, the Court finds the Debtor made no false oaths in his schedules and statements as

to DUB or ZGroup. A debtor must file a schedule of assets and liabilities as prescribed by the

Official Form. 11 U.S.C. § 521(a)(1)(A), Fed. R. Bankr. P. 1007(b). Part 4 of Schedule A/B titled

"Describe Your Financial Assets" provides "Do you own or have any legal or equitable interests

in any of the following?" and lists at paragraph 17 deposits of money.[52] Schedule A/B required the

Debtor to list *his* deposits of money, or bank accounts. As previously discussed, LCC assets are

not property of the Debtor. Because the Debtor was under no obligation to list LLC assets in

paragraph 17, lack of this disclosure was not a false oath.

Russo also failed to demonstrate the Debtor made a false oath by valuing his interest in

DUB at $100. Russo referred to "over $100,000" being generated by DUB to demonstrate the

Debtor undervalued DUB. Based on the evidence presented, the Court cannot determine how

---

[51] Doc. No. 76 at 12 and 15.
[52] Ex. 4, Schedule A/B at ¶ 17.

Russo calculated this amount. There is no evidence before the Court, such as tax returns, financial statements or expert reports, which demonstrate DUB's value or that the Debtor's valuation is fraudulent. The Debtor disclosed his interest in DUB on his schedules and considering that DUB had only been operating about five months on the Petition Date, the Court finds no fraud with the Debtor's valuation. *See In re Poland*, 222 B.R. 374, 380 (Bankr. M.D. Fla. 1998) ("A debtor's estimation [of a business] is often far from exact, and is more often than not, based on estimates, not tangible facts."). Nor did the Debtor make a false oath by failing to disclose the transfer of "business opportunity and all economic value" of his sole proprietorship to DUB. As previously discussed, Russo failed to demonstrate the Debtor transferred any property to DUB. The Debtor is not required to disclose a transfer that did not occur.

Finally, Russo did not prove the Debtor made a false oath by failing to disclose ZGroup— an entity formed after the Petition Date. Bankruptcy schedules must contain the debtor's interest in property as of the commencement of the case. *In re Wakefield*, 312 B.R. 333, 337 (Bankr. N.D. Tex. 2004). Although debtors must continuously disclose assets that are part of the bankruptcy estate, chapter 7 debtors are not required to disclose assets acquired after commencement of the case which do not become part of the bankruptcy estate. *Ortega v. Bel Fuse, Inc.*, 546 B.R. 468, 471-72 (S.D. Fla. 2016). Here, the Debtor's interest in ZGroup could not have been part of the bankruptcy estate as it did not exist on the Petition Date. The Debtor was not required to amend his schedules to disclose his interest in ZGroup. Accordingly, the Court finds the Debtor did not make a false oath in his schedules and statements relating to DUB and ZGroup.

Income and Employment

Russo asserts the Debtor made false oaths in his schedules and statements by failing to accurately disclose income earned from operating a business and by failing to disclose R&R

Daycare and Graffiti Junktion as employers.[53] Based on Debtor's Schedule I and DUB's bank account statements, Russo argues the Debtor omitted his 2020 business income because the Debtor's income calculations did not include deposits made into DUB's bank account totaling: $34,000 in July 2020, $43,905.56 from July 29, 2020 through November 25, 2020 and $69,975 from January 4, 2021 through November 18, 2021.[54] The Debtor testified that his accountants provided the amounts disclosed for his earned business income and did not know how the amounts disclosed were obtained.[55]

Russo failed to demonstrate that the Debtor made a false oath by omitting income from operating a business. A chapter 7 debtor is not required to disclose postpetition income on his bankruptcy schedules and statements. *In re Darr*, 472 B.R. 888, 900 (Bankr. E.D. Mo. 2012). As a result, the Debtor could not have made a false oath with respect to business income he is not required to disclose on the bankruptcy statements and schedules. So, the Court will only consider the deposits made into DUB's bank account before the Petition Date.

Before examining DUB's deposits, the Court must discuss a critical error Russo made at trial. Throughout the trial, Russo referred to Exhibit 4 and Exhibit 5—which are respectively, Debtor's initial bankruptcy schedules and statements, including Schedule I, and an amendment to Schedule A/B—to demonstrate that the Debtor committed a false oath by omitting income from operating a business. A couple weeks after the Petition Date, however, the Debtor amended Schedule I ("Amended Schedule I).[56] A debtor may amend a bankruptcy schedule or statement before the case is closed. Fed. R. Bank. P. 1009(a). As a result, the Court considered Debtor's

---

[53] Doc. No. 76 at 12-13.
[54] Doc. No. 76 at 7.
[55] Doc. No. 80. 6/30/22 Trial Tr. 106:6-107:25.
[56] Main Case, Doc. No. 6.

Amended Schedule I to determine whether a false oath occurred, and not initial Schedule I Russo referred to at trial.

Amended Schedule I required the Debtor to estimate as of the Petition Date, his monthly income.[57] Debtor disclosed he received monthly social security income of $2,061 and monthly net income from operating a business of $2,692.66 ("Net Business Income").[58] The Debtor also filed an amended Official Form 122A-1 ("Means Test Form") with Amended Schedule I.[59]

According to the Means Test Form, Debtor obtained the Net Business Income on Amended Schedule I by deducting the prior six-month average of business expenses ($5,780.17) from the prior six-month average of business income ($8,472.82).[60] To obtain the six-month averages, the Debtor itemized the gross business income and expenses for each month from March 2020 through August 2020.[61] The gross business income listed for July 2020 is $34,900 and included the $34,000 deposit Russo alleged the Debtor omitted.[62] Accordingly, the Court finds the Debtor did not omit business income with respect to the $34,000 deposited into DUB's bank account for July 2020.

Because the deposits totaling $43,905.56 from July 29, 2020 through November 25, 2020, include both prepetition and postspetition deposits, the Court carefully reviewed DUB's bank statements to determine when the deposits occurred. DUB's July 2020 bank account statement provided that a $25,000 deposit was made on July 29, 2020.[63] The $25,000 deposit is included in the total deposit of $34,900 for July 2020 disclosed on the Means Test Form. As a result, the Debtor disclosed the $25,000 as previously discussed.

---

[57] Main Case, Doc. No. 6.
[58] Main Case, Doc. No. 6 at 4.
[59] Main Case, Doc. No. 6 at 8.
[60] Main Case, Doc. No. 6 at 11.
[61] Main Case, Doc. No. 6 at 11.
[62] Although Russo referred to $34,000 of deposits in July 2020, DUB's bank account statements had deposits totaling $34,900 for July 2020. See Ex. 23.
[63] Ex. 23.

DUB's August 2020 bank account statement provided for $ 0 deposits, which is consistent with the amount provided on the Means Test Form.[64] DUB's September 2020 bank account statement shows deposits totaling $12,480 and withdrawals totaling $12,443.56 before the Petition Date.[65] The Means Test Form did not require the Debtor to itemize September 2020 and as a result, the Net Business Income on Schedule I did not include the Debtor's net business income for September 2020.

The evidence, however, did not demonstrate that the Debtor received net business income for September 2020. None of the withdraws from DUB's bank account could be traced to the Debtor as business income. Finally, to the extent the Debtor received a benefit from DUB not disclosed as income (such as direct payment of a personal expense), Russo failed to demonstrate a fraudulent intent by the Debtor. The Debtor previously operated as a sole proprietor for at least 15 years, using his personal bank account for both business and personal expenses. The Debtor testified after DUB's formation he used DUB's bank account to make some rental payments.[66] After the Debtor's accountant informed him such transfers were improper, the Debtor testified he stopped.[67] The Court finds this testimony credible and to the extent the Debtor failed to disclose such payments made before the Petition Date as income, if any, is inadvertent.

As to the allegation Debtor failed to list R&R Daycare and Graffiti Junktion as employers, there is simply no evidence that Debtor had been an employee of either entity. The Court finds that Debtor did not fail to disclose or conceal his income or employment and that any failure was inadvertent and not fraudulent.

---

[64] Ex. 27, Doc. No. 6 at 11.
[65] Ex. 40.
[66] Doc. No. 80. 6/30/22 Trial Tr. 55:15-56:11.
[67] Doc. No. 80. 6/30/22 Trial Tr. 55:15-56:11.

Debts and Payments to Creditors

Russo argues the Debtor made false oaths in his schedules and statements by listing a $100,000 IRS tax lien, indicating his debts are primarily consumer and failing to disclose a $400 payment to Morales in his Statement of Financial Affairs.[68] With little explanation, Russo alleges the Debtor misrepresented he had a $100,000 IRS tax lien because the lien is a "self-releasing lien" under 26 U.S.C. §6325(a).[69] The Debtor, however, listed the IRS as a priority creditor with a $100,000 *unsecured claim*.[70] Because the Debtor did not assert the IRS had a tax lien in his schedules, no misrepresentation occurred.

The Court also finds the Debtor had no fraudulent intent by indicating his debts are primarily consumer debts and failing to disclose a $400 payment to Morales. Russo did not demonstrate how the Debtor's characterization of debts, as primarily consumer, was false. But even if the Court assumes the statement was false, the Debtor gained no advantage by such statement. By indicating his debts are primarily consumer, the Debtor had to pass the means test under §707(b) to demonstrate his bankruptcy filing was not an abuse. If the Debtor had indicated his debts are primarily not consumer, the means test under §707(b) would not have applied. So, the Debtor could not have made such statement with a fraudulent intent. Similarly, the $400 check payable to Morales noted that it was reimbursement for "Dinner with Chris" and an isolated transaction.[71] Having considered the Debtor's testimony and demeanor, the Court finds the failure to disclose a $400 payment to Morales to be a simple error and not done for an improper purpose.

---

[68] Doc. No. 76 at 13-14.
[69] Doc. No. 76 at 13.
[70] Ex. 4, Schedule E/F at ¶ 2.1.
[71] Ex. 19.

Russo failed to demonstrate by a preponderance of the evidence the Debtor knowingly and fraudulently made a false oath in connection with this bankruptcy case. Accordingly, no basis exists to deny the Debtor a discharge under § 727(a)(4)(A) of the Bankruptcy Code.

### 11 U.S.C. § 727(a)(5)
### Loss or deficiency of assets

Section 727(a)(5) of the Bankruptcy Code allows the court to deny the debtor a discharge when the debtor "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). To prevail under § 727(a)(5), plaintiff must establish the debtor had a cognizable ownership interest in specific identifiable property not too far in time before the bankruptcy filing that the debtor no longer has. *Jones v. Rumptz (In re Rumptz)*, Case No. 3:19-bk-535, 2020 WL 2462528 at *8 (Bankr. M.D. Fla. May 12, 2020); *D.A.N. Joint Venture III, L.P. v. Fasolak (In re Fasolak)*, 381 B.R. 781, 792 (Bankr. M.D. Fla. 2007). Once plaintiff establishes the basis of the § 727(a)(5) objection, the burden shifts to the debtor to "explain satisfactorily the loss." *Fasolak*, 381 B.R. at 793 (quoting *In re Hawley*, 51 F.3d 256,249 (11th Cir. 1995). An explanation must convince the judge to be satisfactory. *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 619 (11th Cir. 1984); *Rumptz*, 2020 WL 2462528 at *8. "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *Id*.

Russo asserts the Debtor failed to explain satisfactorily the loss of his gross business income from $81,685 in 2018 to $14,850 in 2019, and then to a negative $59.83 in 2020 as provided on the Debtor's schedules and statements.[72] Although the Debtor explained the COVID-19 pandemic resulted in a reduction of business, Russo argues the Debtor's explanation was not

---

[72] Doc. No. 76 at 17-18.

satisfactory given the "over $100,000" of profits generated by the Debtor's businesses before and after the Petition Date.[73] To demonstrate the Debtor's businesses generated "over $100,000" of profits, Russo cites the identical deposit slips, wire transfer receipts, partial bank statements and negotiated checks from the Debtor's bank accounts, DUB's bank account, and ZGroup's bank account that he relies on for his allegation that Debtor violated § 727(a)(2).[74]

Russo has not met his initial burden to show that a loss or deficiency of an asset occurred. Russo fails to demonstrate that the Debtor had a cognizable ownership interest in specific identifiable property that was lost. Here, Russo does not argue that the Debtor failed to explain the loss of business income he received—$81,685 in 2018 or $14,850 in 2019—but instead, that the Debtor failed to explain why his business income decreased even though his business had "over $100,000" of profits. Russo relied on the business assets, but did not establish what the Debtor received or should have received. As a result, Russo failed to identify a specific identifiable property the Debtor lost.

Furthermore, the Court could not determine how Russo calculated the Debtor's businesses had profits over $100,000. Sure, the business' bank account may have received deposits totaling around $100,000, but that is not profit. Further as discussed under § 727(a)(2), the assets of an LLC are not property of the Debtor. So, the Debtor had no cognizable ownership interest in the funds deposited into the businesses' bank accounts. To the extent Russo referenced deposits made in the Debtor's personal bank account, the evidence demonstrated that the funds were used to pay expenses, such as Morales's 25% commission, business expenses and Debtor's living expenses. The evidence presented did not conflict with this assertion. As a result, no basis exists to deny the Debtor a discharge under § 727(a)(5) of the Bankruptcy Code.

---

[73] Doc. No. 76 at 17-18.
[74] Doc. No. 76 at 5 and 18.

### Other Potential Claims

Finally, the Court must address an argument raised for the first time in Russo's Closing Trial Memorandum. Russo argues the Debtor's bankruptcy case should be dismissed under 11 U.S.C. § 707(b) because the Debtor either misrepresented his income and expenses to satisfy the means test or due to the totality of the circumstances of this case or due to the Debtor's bad faith.[75] The Court finds this argument without merit for several reasons.

First, Russo never formally pled a § 707(b) dismissal request in this proceeding. No count in the amended complaint is titled § 707(b).[76] No motion to dismiss was filed in the bankruptcy case. Instead, the *only* reference to § 707(b) occurred in paragraph 101 of the 104 paragraph amended complaint, under Count V titled "Failure to Explain Satisfactorily Any Loss of Assets or Deficiency of Assets to Meet Debtor's Liabilities in Violation 11 U.S.C. § 727(a)(5)" and stated "Consequently, Debtor would not meet the means test based on corrected figures pursuant to 11 U.S.C. § 707(b)."[77] Because the legal standards under § 707(b) and § 727(a) are not interchangeable, this single paragraph failed to formally assert an action under § 707(b). *See In re Sheidler*, No 15-8011, 2016 WL 1179268 at * 12 (B.A.P. 6th Cir. 2016)(bankruptcy court did not err finding plaintiff did not formally plead a § 707 dismissal request in a § 727 action when the record did not support it and when the legal standards under § 707(b) and § 727(a) are not interchangeable). Accordingly, the Court finds that Russo did not assert a § 707(b) dismissal request in this proceeding and to do so now is untimely. *See* Fed. R. Bankr. P. 1017(e) (motion to dismiss for abuse under 707(b) may be filed only within 60 days after the § 341 meeting of creditors).

---

[75] Doc. No. 76 at 14 and 19.
[76] Doc. No. 12.
[77] Doc. No. 12 at ¶ 101.

Yet, even if Russo formally pled a § 707(b) dismissal request in the amended complaint, the request is denied. Section 707(b) of the Bankruptcy Code allows the court to dismiss a chapter 7 case filed by an individual debtor, whose debts are primarily consumer debts, if the court finds "the granting of relief [i.e. bankruptcy discharge] would be an abuse of the provisions" of chapter 7. 11 U.S.C. § 707(b); *In re Witcher*, 702 F.3d 619, 621 (11th Cir. 2012). Under § 707(b)(2), the court shall presume abuse exists if the debtor does not meet the means test, a statutory formula which considers various factors, including the debtor's income. 11 U.S.C. § 707(b)(2); *See also Witcher*, 702 F.3d at 621. "If a presumption of abuse arises under the means test and is not rebutted, the court may dismiss or convert the chapter 7 case." *Witcher*, 702 F.3d at 621.

Here, the Court finds a presumption of abuse did not arise under the means test. Russo argues the Debtor understated his income and overstated his expenses to achieve a no presumption of abuse for the means test. As discussed under § 727(a)(4)(A), the Debtor made the required disclosures regarding his income from operating a business on the Means Test Form. Based on the record evidence, the Court found no understatement of the Debtor's income or overstatement of expenses on the Means Test Form. The calculations on the Means Test are accurate. As a result, a presumption of abuse did not arise under the means test.

If an abuse does not arise under § 707(b)(2), the court shall consider under § 707(b)(3) "whether the debtor filed the petition in bad faith," or whether "the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3); *Witcher*, 702 F.3d at 621. The movant has the burden of proving abuse by a preponderance of evidence under § 707(b)(3). *In re Ard*, Case No. 3:11-bk-7120 2013 WL 12461147 at * 3 (Bankr. M.D. Fla. Feb. 19, 2013).

Based on the evidence presented, Russo failed to meet his burden. Russo argued the Court should dismiss this case for bad faith or based on the totality of circumstances since the Debtor made false oaths and because the Debtor failed to disclose all business income, the Debtor had an ability to pay his debts.[78] The Court has already found the Debtor's discharge should not be denied for a false oath under § 727(a)(4)(A), and the evidence presented did not demonstrate that the Debtor understated his business income. Based on Russo's arguments for dismissal under § 707(b), Russo failed to persuade the Court by a preponderance of evidence.

Nevertheless, the Court carefully reviewed all the evidence presented and could not find that the Debtor filed this case in bad faith or that under the totality of circumstances, the Debtor's financial situation demonstrated an abuse of the bankruptcy process. *See Ard*, 2013 WL 12461147 at * 3 (Section 707(b)(3) is "not intended to determine whether a debtor's conduct is abusive toward individual creditors, but is instead intended to determine whether the conduct is abusive toward the bankruptcy process as a whole"). Here, the Debtor testified that he filed bankruptcy because his income had decreased and as a result, he fell behind on his rent and vehicle payments.[79] The Court finds the Debtor's testimony credible.

During the case, CarMax Auto Finance ("CarMax") obtained stay relief to repossess the Debtor's only vehicle.[80] The Debtor's bankruptcy schedules listed debts owed to the Internal Revenue Service ($100,000), Russo ($60,000), the former landlord ($36,000), CarMax ($25,000) and others for medical or legal services. The Debtor owned no real property.[81] Amended Schedule I and Amended Schedule J provided a *negative* monthly net income of approximately $1,500.[82]

---

[78] Doc. No. 76 at 14.
[79] 6/30/22 Trial Tr. 115:7.
[80] Ex. 4, Schedule A/B at ¶ 1, Doc. No. 80. 6/30/22 Trial Tr. 115:15, Doc. No. 12.
[81] Ex. 4, Schedule A/B at ¶ 1.
[82] Doc. No. 6 at 6.

Although some of the expenses listed on Schedule J seemed a little high, any reasonable reduction of expenses or "belt tightening" would not have resulted in any significant positive monthly net income to pay creditors. The Debtor is also older and receives social security.[83]

The Debtor's lifestyle does not appear to have improved after the bankruptcy filing. Although the Debtor's business income may have increased between 2019 and 2020, the evidence presented did not demonstrate such increase would occur in the future. Considering the foregoing, the Court finds the Debtor did not file this case in bad faith and that there is no abuse of the bankruptcy process. Accordingly, Russo's request to dismiss the Debtor's case under 11 U.S.C. § 707(b) is denied.

### Conclusion

Even though Plaintiff admitted over 160 exhibits, the evidence simply did not prove the Debtor violated the provisions of § 727(a)(2), (a)(3), (a)(4), (a)(5) or that dismissal was appropriate under § 707(b). Plaintiff did not meet his burden. A separate Final Judgment consistent with this Memorandum Opinion will be entered in favor of Debtor on all counts of the complaint, and against the Plaintiff. The Debtor is entitled to a discharge.

---

[83] Doc. No. 6 at 6.